Judge versus Montanez in State of Corona has been submitted on the briefs. The final case on calendar for argument is Kirkman v. State of California. Good morning, counsel. Good morning, your honors. I'm going to try to save three minutes for rebuttal and I'll attempt to watch the clock. May it please the court, my name is Lee Roystacker and I represent California Highway Officer Ramon Silva. As the court knows, this is an officer-involved shooting case that took place on a busy highway in the middle of the day. The case has unique facts. It was an extremely fast-paced event with rapidly changing circumstances. Thirty seconds elapsed from the time that my client arrived on the scene until the shooting. And in that culminating moment where the shooting took place, the decedent popped out from behind a car in a shooter stance with something in his hands. Well, just a minute. I guess I'm trying to figure out. In the normal qualified immunity case, I would have to use the plaintiff's alleged facts, right? Correct. Not the defendant. You're the defendant. You got the officer. I was there with you. I represented policemen all the time in this kind of a situation. But my biggest problem was I had to use the plaintiff's alleged facts and I had to do them in a situation where the officer was only entitled to immunity as a matter of law, assuming all the factual disputes were resolved against the officer and all reasonable inferences were drawn in the plaintiff's favor. The only way this case is any different whatsoever, it seems, is that there's a new case out. It's Scott v. Harris. And this says that for purposes of a summary judgment as to qualified immunity, the district court's use of a plaintiff's alleged facts may be disturbed by a video where it blatantly contradicts the plaintiff's version of events to the point where it so utterly discredited those facts that no reasonable jury could believe it. Is that your argument today, that this footage is so blatantly different than the plaintiff's facts that I have to use the camera footage rather than the plaintiff's facts? Is that your argument? Essentially, yes. And a couple of things. The alleged facts is always kind of giving me a pause because in the context of summary judgment, it's not really alleged, it's the evidence. Well, but on summary judgment, on a qualified immunity, we take the plaintiff's allegations. That's what we have to take. You can't throw in anything the defendant says. You have to say everything the plaintiff says and every intent about it is against me. But even then, I win. Provided they are material facts. I understand. Yes. But in this case, you want to undo those alleged facts by this footage. I believe the footage certainly contradicts any allegation that the decedent was not in a shooter stance. Well, I guess I looked at this video and frankly, Mr. Alain is, if he's in a shooter stance at all in the footage, it's for less than a half of a second. I mean, I can't really tell whether it's really a shooter stance or not. But if it is, it was less than a half a second. Do you agree with that? In the video? Yes. But that was also the reaction time that Mr. or my client had. That half a second. Well, and it was hard to see Alain's at all in the video once he turns the corner because it happened so fast, right? That is part of it. It happened so fast, yes. So does your position regarding Scott v. Harris rely solely upon the screenshots portraying the supposed shooter stance? I don't think that's certainly part of it. But I think if record evidence directly contradicts the allegations, that also is in line with Scott and some of this court's decisions. The video is certainly one part of it. But if the video's not in, then I have to look at the plaintiff's facts. I would. And at that point, I think you lose. So that's why it's problematic to me because it seems to me that this video evidence doesn't utterly discredit the plaintiff's facts. There isn't enough to it. I looked at it enough to try to really look to see, having been in your case before, your situation, standing in your shoes, and it's less than a half of a second. I think the still shots, because it happened so quickly, I think the still shots that were taken from frames of the video are probably better in terms of showing exactly what happened in that fraction of a second. Well, don't you think that the screenshots, because they're so short, can take what is happening out of context? I don't. Well, I guess I'm trying to figure out why, having looked at it. There really isn't, in my view – well, I think the record amply supports that there really isn't any dispute that when he popped out from around the side of the car, he was in a shooter stance. Indeed, their expert takes that position, and his opinion is the guy was trying to commit suicide by cop. The only dispute that the district court identified below was what he was doing in the fraction of a fraction of a second after he came around the car right at the same time as my client made his first shot, whether his arms were going down or whether he was turning slightly. And in our view, that fraction of a fraction of a second is immaterial. I mean the case law is pretty clear. You don't have to wait to see a gun. The glint of steel is not the determining factor. And I think it's really important to remember the sheer speed. If we take out of consideration that there was a shooter stance because we don't believe the video shows it, then is it still your contention that the district court erred in denying the summary judgment? If there was no shooter stance at all?  Well, that's a different case, and I'm not sure we'd be here. So it all relies on this one half second that I saw in the video. For screenshots, we're showing that it started 704.5 to 704.55. I mean, we looked at it time and time again to try to help you. I understand. But again, I don't even think the district court had an issue with him being in a shooter stance at the point he came around the side of the car. The district court's problem, or the district court found, couldn't tell exactly what was happening at the moment he pulled the trigger. I just don't think there's any dispute about him being in a shooter stance. Well, I think the dispute comes in that if you look at the plaintiff's facts, there wasn't ever any shooter stance. And the only way you get to shooter stance is by what you say looking at the video says he did. Because otherwise, nobody says he got in the shooter stance. Well, I think the court has jurisdiction to consider the other evidence in the record. Well, I think we have jurisdiction because it's summary judgment on a qualified immunity. But I'm just trying to put now the evidence in the favor most favorable to the plaintiff. And the only way I can get out of that is by having a video that surely shows me that it is contradictory. And I'm telling you, I looked at it and I couldn't find it. I don't think the video is the only thing you have to rely on. What is there else? The undisputed testimony in the record. There's no undisputed testimony that says there was a shooter stance. Both officers said it. Well, but that's their side. A witness, an independent witness. And that's their side again. We're talking about the plaintiff's version of the facts. Well, again, I don't think there's any dispute that he was in a shooter stance when he came around the side of the car, leaving my client with half a second to assess and react. Let me go one further to a different issue. How can I ever have in front of me on qualified immunity anything about state law claims? Well, the state law claims are, and I pronounce this word wrong every time, intertwined. But they're not intertwined. They are with the Fourth Amendment. All they are is a summary judgment as to what happened at that particular situation. But you can't get qualified immunity on the state law claims. That's correct. So all you can get is a summary judgment on them, which is not intertwined. You've got a summary judgment on qualified immunity, which we can look at. But when you're looking at the normal summary judgment, I couldn't have that in front of me. If there was a normal summary judgment in the case, it wouldn't be in front of me because it can't come up here on this kind of review. The Bain Act, the California Bain Act, and the battery claim are the exact same standard as the Fourth Amendment. Well, I know that. But if there was a summary judgment on the Fourth Amendment itself, we couldn't have that up here in front of us because there would still be damages left. There's no way to bring a normal summary judgment in front of us. The only kind of a summary judgment that I can have in front of me at this point, when the case is still going, is the qualified immunity. Unless you've got another case that tells me I get something else. Well, I mean, this court in Williamson-Virginia National City. But it isn't intertwined here. This is a summary judgment. You don't have qualified immunity on a state law claim. Well, I agree with that. But the point of the claims being intertwined is that the qualified immunity analysis, with the two prongs, looks first at whether there's a Fourth Amendment violation, and second, whether there was clearly established law. All right. If there's no Fourth Amendment violation, that means there's no state law California negligence claim. I'm sorry, state law battery claim or state law Bain Act claim because the standards are the same. That's how it's intertwined. Can I ask a question here? I just want to make sure I understand correctly. Is it your client's position that the qualified immunity concept stands or falls on the shooter's stance?  So are you saying, like, if there was, let's just say there was no shooter's stance, would the decedent running towards two officers pulling something out of a pocket that's grayish in color, that that wouldn't be enough? No. My position is not it's just the shooter's stance. The totality of the circumstances, it's everything. Well, what specifically, when you say everything, what specifically? Is it that he's running with an object, a shooter's stance, and what else? Well, I think that certainly is it, but I think the question was if he wasn't in a shooter's stance. Okay, so you say not just a shooter's stance. Taking an object out of his pocket. Taking an object out of his pocket, and what else? And charging at one officer, and then turning a corner and charging at another, and being about five feet away with something in his hands, even if he wasn't in a shooter's stance. So the charging at the officers, is that undisputed? Do the plaintiffs dispute that? I don't think that's disputed. All right. I don't think that can be disputed, given the video. No. But we'll see what the plaintiff's position is. Okay, thank you. All right, thank you, Counsel. Good morning. Good morning. I'm Cooper Mayne, one of the attorneys for the plaintiff and appellee in this case. So I'd like to address, just go straight into it, since we're already into the case, the question of whether the shooter's stance is really enough here. Because on plaintiff's facts. Well, let me ask you first. Do you dispute that there was a shooter's stance? Do you agree that it's undisputed that the deceased was in a shooter's stance? No. On plaintiff's facts, he was not in a shooter's stance. And the district court agreed with us on page five of her order. She said that it's a very disputed issue whether Elaniz was in a shooter's stance. And is that supported by evidence in the record? It's supported by circumstantial evidence, for sure, in that in Cruz and Longoria, the court found that not having a gun is circumstantial evidence that you're not pulling a gun. Not having a gun is circumstantial evidence that you're not in a shooter's stance. What about the video? The video itself is ambiguous. I think it doesn't show definitively one way or the other. It's blurry. It's very quick. So I think it can go both ways. And the court below found that, in its view, it did not show a shooter's stance. And the court's decision wasn't blatantly contradicted by the video, as Judge Smith mentioned. Well, if I say that there was no shooter's stance, and if I say that at that point I've got to rely on the plaintiff's facts, what is the crime that's at issue for the first gram factor? So there's no serious crime here? This is a mental health call, not a call of a serious crime in progress? Well, wasn't it a supposed assault? The district court addressed that below and determined that the officers couldn't make out an assault because, given that he had just been hit by a truck going 55 miles an hour, he was not able to actually assault anybody. Did we consider whether he was resisting arrest? She may have addressed that. I don't think it was brought up in our briefing. Well, it wasn't brought up in the briefing. That's why I'm trying to figure out what the crime was at issue in the first gram factor. I don't think there's any crime here. I don't think he's able to actually do much. He's just been hit by a truck going 55 miles an hour. He's bleeding from his head. He's woozy. He's not actually able to assault anybody. How would the officers know that? The officers knew that an individual had been hit by a car, I believe a truck, and they knew that he had been hit actually multiple times by multiple vehicles. And there were reports over dispatch that he was trying to kill himself, but there was no indication that he had a weapon, no indication that he was trying to hurt anybody else, no indication that he had threatened anybody. And when they came to the scene, they ordered him to show his hands, and he complied with that. He showed his hands and brought out a glasses case. Is there a dispute of fact regarding whether or not he was charging at the officers, plural? At the time of the shooting, and this gets into the other point. Was there a dispute of fact regarding whether or not he was charging at the officers? I guess the word charging is a little bit loaded. So, I mean, he was definitely moving towards the officers at a quick pace. I wouldn't describe it as charging. So it would be disputed, but only to the extent that that word's a loaded term. But, yes, he was moving towards the officers. So the reason I'm asking these questions is because I'm trying to decide whether or not this is clearly established law. And so with these facts, what is the clearly established law that would put the officers on notice that shooting the decedent under these circumstances would be unconstitutional? So there's several cases. Tell me your best case for the proposition, because we cannot do this at a high level of generality. So the Supreme Court has told us we have to have pretty close facts to give officers notice that what they are doing violates clearly established law. So what is the closest case here that would tell the officers that shooting an individual under these circumstances would be unconstitutional? Yes, Your Honor. So our best case is Espinoza. It's a 2010 case where a suicidal individual was contacted by two officers. The officers said they believed he raised an object that they thought was a gun, and they shot him in self-defense. Both officers shot him. One of them claimed that he heard a gunshot and mistook that for a shot coming from the suspect. When they investigated the scene, they found a glasses case under the suspect's right arm. Was that in a home, though? That was in a home. It was in the attic of a home. Yeah. That's a little different than being on a busy freeway. Do you think that makes a difference to this being clearly established law? Because the home is a more sacrosanct place than a freeway. So do you see that as making a difference in terms of whether this law is clearly established? Well, I would actually argue that our case was a more unreasonable use of force because in that situation, they were in a contained area where the officers were shooting without a risk of hitting bystanders here. The bullets were going past the suspect, and one of them almost hit a truck driver in the background. So opening fire in a public area like this is even more unreasonable. What about Landeros? Landeros is also, that's probably our second best case. Why is it second best? I mean, the district court didn't use either one of those. The district court uses Zion v. County of Orange. Yes, Landeros is. And I looked at the Zion v. County of Orange, so I was glad Judge Hollinson set us off in this idea because I was trying to find the case, and I frankly thought Landeros v. City of Dustin might be better. Oh, a.k.a. H. Landeros? Yes. So in that case... I call it Landeros, but I'm an Idaho boy. I'm just a Yehoo, so you can use that. So that case does have significant similarities. In that case, we also have an individual much more dangerous than the individual here because he had just been assaulting his girlfriend, and he had gang ties. There was indication that he might have a gun. And he's walking down the street. An officer pulls up, and he starts, the officer says, charging towards him. He is ordered to show his hands, and he pulls his hands out just like the suspect did in this case, and the officer shoots him. And in that case, the court found that because he was unarmed, a jury could find that it was unreasonable because he couldn't pose an immediate threat, being that he was unarmed. So that's a great case. Another good case for us is Longoria that has some very helpful language, and it's a very similar circumstance in that the officer is claiming in that case that he believed an unarmed man had a gun and was in a shooter's stance, but the court analyzed the facts, looked at the video, and the Ninth Circuit found that viewing the facts in the light most favorable to plaintiff, a reasonable jury could conclude that the officer knew or should have known that the suspect was not armed, which is our primary argument here, that the other officer at the scene, similar circumstances, was able to identify accurately that the suspect was not armed, that Alaniz was not armed, and therefore couldn't pose an immediate threat of death or severe bodily injury. And just to finish up on Longoria, the court concluded that the question of mistake of fact was a pure question of fact, not a question of law. What about do we have any jurisdiction over these state law claims? No. On the qualified immunity issue, that doesn't extend to state law claims. Additionally, the state law claims have different elements to them, different standards, different jury instructions. They're not exactly overlapping, especially with recent changes to the battery instruction. So I don't believe that there's enough of an overlap to— But we did. The district court did grant summary judgment as to those claims, right? Denied summary judgment, yes. Excuse me, denied summary judgment as to those claims? Sure. But there wasn't any summary judgment granted or denied as to the run-of-the-mill Fourth Amendment claim. It's only as to the qualified immunity claim, right? Well, the court denied summary judgment for the Fourth Amendment claim on both qualified immunity grounds, on both the clearly established prong and the underlying constitutional violation prong. All right. So I wanted to just talk about the video for a minute. The case is cited by the defendant to show when a video clearly contradicts what the plaintiff's facts are and what the court determined are the facts of the case. Our cases like Williams v. City of Sparks, where the video clearly contradicted what the district court was saying happened. They said that the car was not being attempted to be moved, but in the video you see the wheel turning. So it's just obviously not true. The facts of the case are contradicted by the video. Same with Scott v. Harris. So this doesn't raise to that level. The video is very consistent with everything the court says. And I wanted to talk about the ‑‑ there's two issues that come up. We've been focusing on the shooter stance, but I think the case can be really determined more, and there was a lot of discussion about this at the district court level, by whether a reasonable officer would have thought that Alaniz was armed. So that's a problem on two levels. First, there's a credibility issue that during the incident itself, Officer Silva didn't say anything indicating that he believed he had seen a gun. So even though his partner had transitioned to nonlethal force, he didn't warn his partner saying, hey, the suspect has a gun, which you would think he would do. And after the incident, he walked up to his partner and said, what was that in his hands? Was that a gun? Both indicating that he may not have believed that in the moment anyways. And a jury could find that his credibility was not intact and not believe him on that front. But even if we grant that he subjectively believed that he saw a gun, there's lots of evidence to say that it wouldn't be a reasonable mistake to think that he was armed. So the other officer at the scene, in similar circumstances, was able to identify that Alaniz was unarmed. And the object itself is a gray glasses container. This isn't like one of the cases where you have a replica weapon, like Strickland, that had to do with a replica gun, or Napook, that had to do with a replica sword. This object doesn't have a trigger. It doesn't have a barrel. Why would somebody rush towards a police officer and pull out a gray glasses container? What would be the purpose of that? Well, I think the analysis for Fourth Amendment isn't so much what's going on in the head of the suspect, as much as it is what are the circumstances being faced by the officer. So no matter what is going on in the head of a suspect, if you can see that they're unarmed, you know that they are not immediate threat of death. But the officer said they couldn't see if he was unarmed. Well, Officer Von Dracht, facing similar circumstances, could see that he was unarmed, which is evidenced by the fact that he transitioned from his firearm to his taser. And he said in deposition in his statements he would never transition to a taser if he thought he was being faced by something that looked like a gun. So he also described the object as too big and too wide to be a gun. So based on the other officer at the scene and his actions and the object itself, a jury could find that it was unreasonable to mistake Alaniz as armed and that a reasonable officer would have seen that he's unarmed. So then the question of the stance that he's in is not really material because whether somebody is in a stance with their hands out or their hands down or to the side, if you can accurately perceive that they're unarmed, they don't pose an immediate threat of death or severe bodily injury, and it's unreasonable to use lethal force against them. It definitely would have hurt. It definitely wouldn't have helped your client if we'd looked at that video and we'd absolutely seen your client in a shooter's stance standing there for three minutes looking at him. That would have definitely helped the other side, wouldn't it? I think that could cut both ways because the more time he had to look, the more obvious it would be that he was unarmed and the object just looks nothing like a gun. When I said three minutes, that might have been too long. Another case to consider here is Longoria, which we talked about a little bit, but goes straight to this issue of credibility of an officer saying that an unarmed person is pointing a gun at them. And the court finds that that's just a classic jury issue and denies qualified immunity on that basis. All right, counsel, you've exceeded your time. Thank you. Rebuttal. Thank you. Just a couple of comments. Scott clearly says that the court can consider the level of culpability of everybody. So that includes the decedent here. You can look at his conduct. With respect to what the other officer saw, his testimony is clear that he didn't know what the guy had. He said it could have been a knife. It could have been a gun. He thought it was too big to be a gun, but he clearly said several times, I didn't really know what it was. It could have been a knife. It could have been a gun. If you look at the purpose of qualified immunity, I don't think under any set of these facts that you could say my client was clearly incompetent or committed a known violation of the law. And remember, in the Fourth Amendment. Well, isn't that what the clearly established prong does to determine whether or not the officer committed a known violation? Because that's what we do with the clearly established prong.  And in the context of force and under the Fourth Amendment, it's important to remember that facts dictate the result. And these cases often fall on the hazy border between acceptable and unreasonable force. And I clearly believe that this is a case that warrants qualified immunity. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for today. We are on recess until 9.30 a.m. tomorrow morning. All rise.
judges: RAWLINSON, SMITH, Liburdi